UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AARON FLORENCE JR., # 756418,

        Petitioner,                Case No. 13-cv-13296

v                                       Honorable Thomas L. Ludington

KENNETH MCKEE,

        Respondent.
_____/

**ORDER DENYING PETITIONER FLORENCE'S PETITION FOR HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

        This is a habeas corpus petition filed by a state prisoner. Petitioner, Aaron Florence Jr., is serving a life sentence for his St. Clair Circuit Court jury trial convictions of first-degree murder, MICH. COMP. LAWS § 750.316; two counts of armed robbery, MICH. COMP. LAWS § 750.529; and possessing a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. Petitioner Florence claims that: (1) the prosecutor's key witness's identification testimony was tainted when he saw Petitioner's photograph in a newspaper article regarding the crime; (2) the prosecutor presented false testimony; (3) the medical examiner was erroneously allowed to testify by telephone at the preliminary examination; (4) the arrest warrant was defective in violation of the Fourth Amendment; (5) trial counsel failed to move for a change of venue due to pre-trial publicity, and (6) appellate counsel was ineffective for failing to raise meritorious claims during Petitioner's direct appeal.

        Because Petitioner has not exhausted his claims in state court and is accordingly unable to meet the exhaustion requirement, Petitioner Florence's petition for habeas corpus will be

denied. A certificate of appealability and permission to proceed on appeal in forma pauperis will also be denied.

## I.

### A.

This case involves a robbery gone wrong. The evidence presented at trial indicated that on the evening of August 23, 2009, Devon Sapp and Matthew Rogel drove to an apartment complex in Port Huron to purchase ten dollars' worth of marijuana. Tr. I at 166-67, 171-72. When they arrived at the complex, they saw a large group of people standing outside one of the buildings. *Id*. at 172. Rogel called out and asked if anyone "had ten in a tree," which meant ten dollars' worth of marijuana. *Id.* Petitioner ran up to the car and said "Yeah, I got you man." *Id.* at 173-74. Petitioner asked if they would drive him around the block and Rogel told him to hop in. *Id*. at 175.

Two other men, Anthony Lindsay, and Lorenzo Buckles, ran up and said they were going with Petitioner. Tr. II at 228-230. Petitioner gave directions to a side street where he directed them to stop. Tr. I at 179-81.

As Sapp put the car into park, he saw Petitioner press a revolver against Rogel's neck. Tr. I. at 181-82. Petitioner said, "So, what you got man?" *Id.* at 182. The man behind Sapp tapped Sapp on the shoulder and asked "How about you man? What you got?" *Id.* at 183. Sapp panicked and yelled that he did not have anything. *Id.* at 185. Rogel handed Petitioner his ten dollars, and after Petitioner took the money he shot Rogel in the neck. Tr. II at 364-65.

Sapp testified that Rogel looked over at him and began to gurgle, and his eyes rolled back up into his head. Tr. I. at 186-87. Petitioner exited the car and fired several more shots as Sapp, Lindsay, and Buckles ran. *Id.* at 188-91. Sapp later returned to the car and drove Rogel to a

hospital, where he was pronounced dead. *Id.* at 191-94. He had been shot once in the spine and again in the heart. Tr. II at 307-08.

Later that night, Petitioner called Lindsay and told him that he shot Rogel because the victim was "bullshitting" him about only having ten dollars. Tr. II at 369. Petitioner also later admitted to Bynell Orr, a close friend, that he murdered Rogel. Tr. II at 284.

**B.**

Defendant was charged with one count of felony murder, two counts of armed robbery, and a count of possession of a firearm during the commission of a felony. *See* ECF No. 14, Attachment 1. Following a three day jury trial, Petitioner was convicted on all four counts. *Id*, attachment 9. He was sentenced to life without the possibility of parole on the felony murder conviction, terms of 20 to 30 years on the armed robber convictions, and a term of two years on the conviction for possession of a firearm during the commission of a felony. *Id*.

On direct appeal, Petitioner raised two claims: First, he challenged the sufficiency of the evidence. Second, he asserted that the trial court erred in failing to provide the jury with a transcript of one witness's testimony. The Michigan Court of Appeals denied relief in an unpublished opinion. *People v. Florence*, No. 296944 (Mich. Ct. App. August 9, 2011). The Michigan Supreme Court thereafter denied leave to appeal. *People v. Florence*, No. 143817 (Mich. Dec. 28, 2011).

Following the direct appeal process, Petitioner filed a motion for relief from judgment in the trial court on December 19, 2012. The motion raised the same claims Petitioner raises in the instant habeas petition. The state trial court denied the motion for relief by order dated December 27, 2012, and then denied Petitioner's motion for reconsideration on January 30, 2013.

**C.**

At the time he initially filed this petition, on August 1, 2013, it appeared that Petitioner had not attempted to appeal this decision in the state appellate courts. Accordingly, upon initial review, the Court stayed the case to allow Petitioner an opportunity to exhaust his state court remedies, if he had any left. ECF No. 5. Five months later, Petitioner sent a letter to the Court and an amended petition reasserting entitlement to relief based on his same unexhausted claims. Petitioner's letter explained that he made an inquiry with the Michigan Appellate courts and found that he had no appeals pending in those courts. ECF Nos. 6, 7, and 8.

The Court construed these filings as a motion to reopen the case. Accordingly, the stay was lifted and Respondent was ordered to file a responsive pleading along with the relevant state court records. ECF No. 9. Respondent filed an answer asserting that review of Petitioner's habeas claims is barred by his failure to exhaust his claims in state court and his inability to satisfy the exhaustion requirement because the time for appealing the trial court's decision has expired.

**II.**

Before a state prisoner may file a petition of a writ of habeas corpus, he must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" his federal claims so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claims. See *O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v.*

*Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

### A.

In this case, Petitioner did not exhaust any of his claims on direct appeal or in his motion for relief from judgment. Indeed, the Court warned Petitioner of this shortcoming after he filed his petition. Rather than attempt to complete the exhaustion process, Petitioner only confirmed that he had not appealed the trial court's decision, and proceeded to re-file his petition.

Exhaustion is a problem only if there remains a state court remedy available for a petitioner to pursue. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available, a petitioner faces the more serious problem that his claims are deemed procedurally barred from federal habeas review. *Id.*; *Cone v. Bell*, 243 F.3d 961, 966 (6th Cir. 2001) ("If the claim presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred.") (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53, rev'd on other grounds, 535 U.S. 635 (2002)).

In this case, no further state-court remedy remains available to Petitioner. The 6-month period for appealing the trial court's order denying his motion for relief from judgment has long since expired. *See* Mich. Ct. R. 6.509(A). Nor may Petitioner resubmit his claims in a second motion because, as a general rule, a prisoner may file only one motion for relief from judgment. *See* Mich. Ct. R. 6.508(D). Exceptions to this rule exist only for motions based on a retroactive change in the law or on a claim of newly discovered evidence. *See* Mich. Ct. R. 6.502(G)(2).

Petitioner's claims do not satisfy either of these exceptions, and he therefore no longer has a state remedy to exhaust his claims. Because Petitioner does not have an available remedy in the state courts, his claims are considered procedurally defaulted. See *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013).

**B.**

If a petitioner procedurally has defaulted his federal claims in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claims, or (2) that a lack of federal habeas review of the claims will result in a fundamental miscarriage of justice. See *House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495(1986); *Hicks v. Straub*, 377 F.3d 538, 551-52 (6th Cir. 2004).

**i.**

Petitioner has not provided any cause for his failure to timely appeal in state court. Petitioner did not file a reply brief to address Respondent's argument that his claims were defaulted. Nor does anything in the record suggest that Petitioner can establish cause to excuse his failure to appeal the trial court's order. Petitioner's pro se status and ignorance of his rights do not constitute cause for failure to raise his constitutional claims in the state courts. *Ewing v. McMackin*, 799 F.2d 1143, 1151 (6th Cir. 1986). Petitioner did not attempt to exhaust his claims after this Court specifically informed him of the deficiency. Petitioner cannot argue ineffective assistance of counsel to demonstrate cause because he was not constitutionally entitled to counsel beyond his initial appeal with the Court of Appeals. *Coleman*, 501 U.S. at 757. Therefore, the Court finds that Petitioner is unable to establish cause.

If a petitioner fails to show cause for his procedural default, it is unnecessary for a court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, even if Petitioner had shown cause in this case, he is unable to establish prejudice. To establish prejudice, Petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); see also *Haliym v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007) (quoting *Murray*, 477 U.S. at 488).

Here, Petitioner cannot demonstrate prejudice because his claims are without merit. Petitioner first claims that the prosecution used an improperly suggestive identification procedure because Sapp was unable to pick Petitioner out of a photo array, and was only able to identify him when he saw his picture in the paper as part of an article about the crime. Improper police action is a prerequisite to judicial checks on the reliability of an identification because "[a] primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo arrays . . . ." *Perry v. New Hampshire*, 132 S. Ct. 716, 726, 181 L. Ed. 2d 694 (2012). Sapp saw the photograph on his own. Petitioner simply cannot point to any conduct by the police or prosecutor that led to a suggestive identification. Moreover, defense counsel ably cross examined Sapp regarding his identification of Petitioner during trial.

Petitioner's second claim asserts that his rights were violated when the prosecutor allowed Lindsay and Buckles, Petitioner's two accomplices, to testify when they allegedly had reached an agreement between them to "get their stories straight." To prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show: (1) the testimony was false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v.*

*Renico*, 683 F.3d 720, 728 (6th Cir. 2012). Petitioner has not shown that the prosecutor was aware of any agreement between the two witnesses to present a false account of the incident. Furthermore, Petitioner's counsel fully cross examined the two witnesses regarding their potential motivations to testify against Petitioner.

Petitioner's third claim asserts that his rights were violated because the medical examiner testified by phone at the preliminary examination. This fact had no bearing on the outcome of Petitioner's trial, since the medical examiner testified in person at the trial. *See* Tr. II at 324.

Petitioner's fourth claim asserts that his Fourth Amendment right against unreasonable search and seizure was violated by his illegal arrest on an invalid arrest warrant. Fourth Amendment claims such as this are barred from habeas review by *Stone v. Powell*, 428 U.S. 465 (1976). There, the Supreme Court held that, where a petitioner had a full and fair opportunity to litigate a Fourth Amendment claim in state court, a state prisoner cannot be granted habeas relief on the grounds that evidence obtained through an unconstitutional search and seizure was introduce at his trial. *Id.* at 489-95.

Petitioner's fifth claim asserts that his trial counsel was ineffective for not requesting a change of venue when three potential jurors mentioned seeing a newspaper article about the case. The record shows that the three jurors in question revealed this information during the jury selection proceedings. One of the three was dismissed from the jury panel because he indicated he had formed an opinion about the case. The other two did not. The alleged publicity in this case does not meet the high threshold required for a change of venue. See, e.g, *Irvin v. Dowd, Rideau v. Louisiana*, 373 U.S. 723 (1963), *Sheppard v. Maxwell*, 384 U.S. 333 (1966), *Estes v. Texas*, 381 U.S. 532 (1965), *Skilling v. United States*, 561 U.S. 358, 381-82 (2010). As a matter of law, counsel is not ineffective for failing to move for a change of venue when such a motion

would have been denied. See *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial").

Petitioner's sixth claim asserts that his appellate counsel was ineffective for failing to raise any of these claims on appeal. However, because the claims are without merit, counsel was not ineffective for failing to raise them. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). For these reasons, Petitioner has not shown cause for failing to file a timely appeal in State Court, and he cannot show prejudice resulting from that failure.

### ii.

Petitioner has also failed to demonstrate that review of his procedurally defaulted claims is necessary to avoid a fundamental miscarriage of justice. The miscarriage-of-justice exception can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup*, 513 U.S. at 322 (citing *Murray*, 477 U.S. at 495). Because Petitioner has not made a colorable claim of innocence, he cannot assert that manifest injustice would result if the Court does not hear his defaulted claims.

### III.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2). When a district court denies habeas relief, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its ruling. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Having considered the matter, the Court concludes that Reasonable jurists could not debate the correctness of the Court's ruling. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

**IV.**

Accordingly, it is **ORDERED**, that Petitioner Florence's petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED**, that a certificate of appealability is **DENIED**.

It is further **ORDERED**, that permission to proceed on appeal in forma pauperis is **DENIED**.

s/Thomas L. Ludington<br>THOMAS L. LUDINGTON<br>United States District Judge

Dated: October 23, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 23, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager